# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARREN EADES,** | : | |
|     **Plaintiff** | : | **No. 1:19-cv-512** |
| | : | |
|     v. | : | **(Judge Kane)** |
| | : | |
| **JOHN WETZEL, et al.,** | : | |
|     **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to Defendants' second motion to dismiss (Doc. No. 21) pro se Plaintiff Darren Eades ("Plaintiff")'s complaint (Doc. No. 1). After receiving an extension of time (Doc. Nos. 23, 24), Plaintiff filed a brief in opposition to Defendants' motion (Doc. No. 25) on October 17, 2019. Defendants have neither filed a reply brief nor moved for an extension of time to do so. Accordingly, because the time period for filing a reply brief has expired, the motion to dismiss is ripe for disposition.

## I.  BACKGROUND

Plaintiff initiated the above-captioned case on March 21, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 and the Fair Credit Reporting Act ("FCRA") against Defendants John Wetzel ("Wetzel"), Mr. Dreibelbis ("Dreibelbis"), Mr. Swisher ("Swisher"), Debra Jadlocki ("Jadlocki"), Ms. P. Luther ("Luther"), and Mr. Rupert ("Rupert"). (Doc. No. 1.) In his complaint, Plaintiff alleges that at some unknown time, he "read in the newspaper that on April 3, 2018, a company named Accreditation Audit Risk-Management Security, LLC (AARMS) had suffered a data breach, while in possession of the private information of 13,100 inmates, 680 employees and 11 others within the State Department of Corrections (DOC)." (Id. at 7.) AARMS notified the DOC of the data breach on April 9, 2018. (Id.) Defendant Wetzel,

however, did not mail notice of the data breach to Plaintiff until July 19, 2018, and Plaintiff received the notice on July 24, 2018. (Id.)

Plaintiff maintains that the DOC "never informed [him] that they would be distributing his private information (Full Name, Home Address, Social Security Number and Medical Records) to a third party, which is a contracted vendor of the DOC." (Id.) He alleges that the DOC "failed to obtain a signed release form (DC-108 form) from [him] which would have authorized the release of his private information to a third party." (Id.) Plaintiff asserts that Defendants, all of whom are supervisors of various departments within the DOC, disseminated his private information without his consent. (Id. at 2-3, 8.) He further maintains that Defendant Wetzel's failure to promptly notify him of the data breach "gave ample amount of time for [his] private information to be sold/misused." (Id. at 8.) Plaintiff alleges that because of the data breach and the delay in notification, "he is 9.5 times more likely than the public to suffer identity fraud or theft." (Id.) Based on these allegations, Plaintiff asserts that Defendants violated his "civil rights to privacy," his rights under the FCRA, and "numerous State [p]rivacy [l]aws and DOC policy." (Id. at 3, 9.) He seeks declaratory and injunctive relief, as well as damages. (Id. at 4, 10.)

In an Order dated April 16, 2019, the Court granted Plaintiff leave to proceed in forma pauperis and directed the Clerk of Court to effect service of the complaint upon Defendants. (Doc. No. 9.) On June 17, 2019, Defendants filed a motion to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 14.) Specifically, Defendants maintained that the Court lacked subject-matter jurisdiction over Plaintiff's claims because Plaintiff lacked standing to pursue them and that Plaintiff failed to state a claim upon which

relief may be granted. (Doc. No. 15.) In a Memorandum and Order dated August 16, 2019, the Court denied Defendants' motion to dismiss. (Doc. Nos. 19, 20.) Specifically, the Court concluded that Plaintiff had stated a cognizable injury for Article III standing purposes and that Defendants had failed to address whether Plaintiff has a right to privacy regarding his personal information under § 1983 and whether Plaintiff can maintain a claim for relief under the FCRA. (Doc. No. 19 at 7-9.) The Court, therefore, denied Defendants' motion to dismiss without prejudice to their right to file a renewed motion to dismiss, within thirty (30) days, "addressing whether Plaintiff has stated plausible claims for relief under 42 U.S.C. § 1983 and the FCRA." (Doc. No. 20.)

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Defendants also move for the dismissal of Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Doc. No. 15 at 7-8.) Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than

4

formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B. Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

Defendants maintain that Plaintiff's claims pursuant to § 1983 should be dismissed with prejudice because § 1983 "provides only a limited right to privacy for medical information" and because they are entitled to qualified immunity. (Doc. No. 22 at 3.) Defendants assert further that Plaintiff's claims pursuant to the FCRA should be dismissed with prejudice because "neither

5

the Department of Corrections nor its officers are contemplated as proper parties under the FCRA, the FCRA provides very limited private rights of action, and Plaintiff has not adhered to the strict process for bringing a private cause of action." (Id.) The Court considers each argument in turn.

     A.     **Plaintiff's Section 1983 Claims**

As noted above, Plaintiff alleges that Defendants' actions violated his "civil rights to privacy." (Doc. No. 1 at 3.) Individuals have a constitutional right to privacy that protects "the individual interest in avoiding disclosure of personal matters." See Whalen v. Roe, 429 U.S. 589, 599 (1977). "There can be no question that . . . medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980). The Third Circuit has held that inmates retain a Fourteenth Amendment "right to privacy in one's medical information." See Doe v. Delie, 257 F.3d 309, 317 (3d Cir. 2001). That right, however, "is subject to substantial restrictions and limitations in order for correctional officers to achieve legitimate correctional goals and maintain institutional security." See id. This analysis, performed pursuant to Turner v. Safley, 482 U.S. 78 (1987), requires courts to weigh the following four (4) factors:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (internal quotations omitted).

The Delie court did not address whether legitimate penological interests were present in that matter because the court determined that the corrections officials were entitled to qualified immunity. See id. at 318-323. Specifically, the Third Circuit concluded "that the contours of defendants' legal obligations under the Constitution were not sufficiently clear in 1995 that a reasonable prison official would understand that the non-consensual disclosure of a prisoner's HIV status violates the Constitution." See id. at 322. The Third Circuit noted that "[t]he exact parameters of a prisoner's right to privacy in [medical] information will have to be determined in a later case on a more complete record, where the Turner factors can be fully considered in the context of the penological interests concerned." See id. at 323. In the above-captioned case, Defendants maintain that this Court "should make a similar determination and hold that [they] are entitled to qualified immunity because Plaintiff's claimed right of absolute privacy in his medical information has not been clearly established by the limited case law." (Doc. No. 22 at 6.)

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Id. Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at

7

741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in White v. Pauly, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard. In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate."[1] See id. at 551 (internal quotation marks omitted) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). The Supreme Court reiterated that the clearly-established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right. See id. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Defendants argue that qualified immunity is appropriate because cases following Delie "have done little to fill in the gaps left by Delie and define the parameters of a prisoner's right to privacy in his medical information." (Doc. No. 22 at 7.) For example, in 2012, the Third Circuit considered an inmate's appeal of the district court's conclusion that qualified immunity applied

---

[1] There may be the rare "obvious case," however, where "a body of case law" is not necessary. See Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

to his claim that his right to privacy was violated when medical staff members held "confidential counseling sessions within view and within potential earshot of other inmates." See Smith v. Hayman, 489 F. App'x 544, 548 (3d Cir. 2012). The Third Circuit agreed that the "record d[id] not demonstrate that the defendants violated a clearly established constitutional right," noting that it was "aware of no case law . . . that would suggest that the conduct of the defendants, in light of their attempts to avoid disclosure, violated a clearly established constitutional right, and [Delie] did not establish any such rule with 'obvious clarity.'" See id. at 549 (quoting Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012)). In 2016, the United States District Court for the Eastern District of Pennsylvania concluded that qualified immunity shielded corrections officers from the inmate-plaintiff's claim that his privacy rights were violated when officers disclosed his HIV status because "case law at the time of the alleged violation did not clearly state what actions would and would not constitute a violation of a prisoner's right to privacy in his medical information." See Jefferson v. Husain, No. 14-2485, 2016 WL 1255731, at *9 (E.D. Pa. Mar. 31, 2016). Likewise, in 2014, the Honorable William W. Caldwell, relying upon the Third Circuit's decision in Smith, concluded that qualified immunity barred an inmate-plaintiff's claim that his privacy rights were violated when a prison doctor held counseling sessions at his cell door. See Illes v. Kcomt, No. 1:12-CV-0395, 2014 WL 297352, at *3 (M.D. Pa. Jan. 27, 2014).

In the instant case, Plaintiff maintains that Defendants violated his constitutional right to privacy by unlawfully releasing his personal information to a third-party vendor, AARMS, resulting in his information being misappropriated when AARMS suffered a data breach. (Doc. No. 1 at 7.) As noted above, in order to conclude that a right is clearly established for purposes of qualified immunity, the Court must analyze the specific facts of the case, consider the circumstances confronted by the defendants, and find a body of relevant case law addressing

9

similar circumstances. See Wesby, 138 S. Ct. at 590 (citing White, 137 S. Ct. at 552; al-Kidd, 563 U.S. at 741; Brosseau, 543 U.S. at 199). The Court has not located any relevant Supreme Court or Third Circuit precedent holding that corrections officials' decision to release inmates' personal information to a third-party vendor violates the right to privacy under the Fourteenth Amendment. The Court, therefore, concludes that any alleged violation of Plaintiff's right to privacy under the facts alleged was not a clearly established right under the second prong of the qualified immunity analysis. The Court will accordingly grant Defendants' motion to dismiss with respect to Plaintiff's § 1983 claims.[2]

### B. Plaintiff's FCRA Claims

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007); see also SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant[,] and current information in a confidential and responsible manner" (quoting Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010)). Under the FCRA, consumer reporting agencies must "follow reasonable procedures to ensure maximum possible accuracy of

---

[2] In his brief in opposition, Plaintiff suggests that "[w]hile the parameters of [his] right to privacy in his medical information may not as of yet been fully define[d] . . . [his] right to privacy in his Social Security Number has [in] fact and law been fully and clearly defined." (Doc. No. 25 at 7.) This Court has previously noted that "the release of a person's social security number may violate a plaintiff's substantive due process right to privacy." See Reed v. Chambersburg Area Sch. Dist. Found., No. 1:13-cv-00644, 2014 WL 1028405, at *5 (M.D. Pa. Mar. 17, 2014). Again, however, the Court has not located any relevant Supreme Court or Third Circuit precedent holding that corrections officials' decisions to release inmates' personal information, including their Social Security numbers, to a third-party vendor violates the Fourteenth Amendment such that the right was clearly established to defeat the application of qualified immunity.

the information concerning the individual about whom the report relates." See 15 U.S.C. § 1681e(b). A consumer reporting agency is an agency that "regularly engages in whole or in part in gathering or evaluating information on consumers for the purposes of furnishing consumer reports to third parties." See id. § 1681a(f); see also DiGianni v. Stern's, 26 F.3d 346, 348-49 (2d Cir. 1994) (noting that the term "consumer reporting agency" as used in the FCRA "refers to firms that are in the business of assembling and evaluating consumer credit information"). In the instant case, the Court agrees with Defendants that they are not "consumer reporting agencies" as contemplated by the FCRA.

Plaintiff, however, maintains that Defendants are liable for the "unauthorized dissemination" of his personal information. Under the FCRA, a "furnisher" of information is an entity, often a creditor, that furnishes information regarding a consumer to consumer reporting agencies for inclusion in a consumer report. See 16 C.F.R. § 660.2(c). Section 1681s-2(b) of the FCRA "imposes certain duties on a furnisher/creditor who has been notified by a consumer credit reporting agency that a consumer has disputed information furnished by that furnisher/creditor." See Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs., 696 F. App'x 87, 90 (3d Cir. 2017). These duties, however, "are triggered only after a furnisher of information receives notices from a consumer reporting agency about a dispute." See id. at 91; see also SimmsParris, 652 F.3d at 358 (noting that notice "must be given by a credit reporting agency, and cannot come directly from the consumer"). While a consumer "may certainly notify a furnisher/creditor directly about his dispute . . . there is no private cause of action under § 1681s-2(b) for a furnisher's failure to properly investigate such a dispute." See Harris, 696 F. App'x at 91.

In the instant case, Plaintiff's complaint fails to establish that he notified any consumer reporting agency about a dispute arising from Defendants' alleged furnishing of his personal information. Plaintiff does not dispute this finding in his brief in opposition. Plaintiff's failure to notify any consumer reporting agency about such a dispute, therefore, renders fatal any claims brought against Defendants pursuant to § 1681s-2(b). Accordingly, the Court will grant Defendants' motion to dismiss as to Plaintiff's FCRA claims.[3]

## IV. LEAVE TO AMEND

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad

---

[3] In his brief in opposition, Plaintiff suggests for the first time that Defendants violated 42 U.S.C. § 405(c)(2)(C)(viii), which provides that "no authorized person shall disclose any such [S]ocial [S]ecurity account number or related record." See 42 U.S.C. § 405(c)(2)(C)(viii). He also appears to suggest that Defendants' actions violated the Privacy Act, 5 U.S.C. § 552a, which was enacted "to protect the privacy of individuals identified in government information systems by regulating the collection, maintenance, use and dissemination of personal information and prohibiting unnecessary and excessive exchange of such information within the [G]overnment and to outside individuals." See Cochran v. United States, 770 F.2d 949, 954 (11th Cir. 1985). As an initial matter, a plaintiff cannot raise new claims in a brief opposing a motion to dismiss. See Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988). In any event, Plaintiff's purported claims cannot survive because § 405(c)(2)(C)(viii) does not provide a private cause of action. See Biccum v. City of Watertown, N.Y., No. 7:16-CV-645, 2019 WL 4752927, at *6 (N.D.N.Y. Sept. 30, 2019); Grams v. Esters, No. 1:07CV-145-R, 2008 WL 339509, at *1 (W.D. Ky. Feb. 6, 2008). Moreover, the Privacy Act applies to agencies, not individuals, see Walsh v. United States, No. 1:05-CV-0818, 2006 WL 2346420, at *1 (M.D. Pa. Aug. 11, 2006), and "there is no private cause of action under the Privacy Act against a municipal or state agency." See N'Jai v. Pittsburgh Bd. of Public Educ., 487 F. App'x 735, 737 (3d Cir. 2012).

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing, the Court finds that affording Plaintiff an opportunity to file an amended complaint would be futile. See Foman, 371 U.S. at 182; Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (stating that the futility exception mandates that a complaint, as amended, would fail to state a claim upon which relief may be granted).

## V.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' second motion to dismiss (Doc. No. 21) and dismiss Plaintiff's complaint (Doc. No. 1) with prejudice. Plaintiff will not be granted leave to file an amended complaint. An appropriate Order follows.